## Lake Shore & Michigan Southern R. R. Co.
## v.
## Harriet Hunt, Adm'r, etc.

Negligence.—Where a conductor of a freight, whose train was delayed on the main track by trains standing ahead, knowing that other trains were expected soon to follow his own, did not post signals as the explicit rules of the company required him to do, but, with his brakemen, went to sleep in his caboose, remarking that a semaphore which stood near the crossing

would take care of them (it was not the purpose or object of said semaphore to furnish signals to incoming trains, and at the time in question it was displaying a white light), and was killed by an incoming train crashing into the caboose. *Held*, that as the conductor was not in the exercise of ordinary care at the time of the injury, his administrators can not recover.

Appeal from the Superior Court of Cook county; the Hon. Sidney Smith, Judge, presiding.    Opinion filed February 3, 1886.

This was an action under the statute brought by appellees as administrators of Louis P. McBride, deceased, against the appellant, to recover for the benefit of the next of kin of deceased, such damages as they had sustained by reason of his death, which was occasioned November 18, 1880, near South Englewood, this county, as it was alleged, by the negligence of appellant in the management of its trains.    Upon the plea of not guilty and a trial by jury, verdict and judgment against appellant followed, in the sum of three thousand one hundred dollars.    Hence this appeal.

The defendant's motion for a new trial and exception to the order of the court overruling it, together with all the evidence, are preserved by the bill of exceptions.

It appears from the record that McBride was, at the time of the injury, the conductor of a freight train; had been for a considerable time previously, and had been in the service of the defendant as a railroad employe at this end of defendant's line of railways for some eight or ten years; that some time in the night of November 17 and 18, 1880, he left Elkhart, Indiana, in charge as conductor of a freight train with a caboose car at the rear, to come to Chicago, or defendant's yards at 43d and 42d streets; that at some time in the early morning of November 18th, the morning being cold and dark, McBride came with his train to within a half or three quarters of a mile of Englewood station, and about two miles of the point of destination, being with his train upon the west main track, and was there compelled to stop on said track on account of other trains standing upon it ahead of him; that when so stopping, he had a brakeman with him in the caboose car, of the name

of Wishart; that there were other trains coming from the same direction McBride had come, which would have to come on the same track on which his train was standing, and which were then due, or would be in a short time; that neither Mc-Bride nor said brakeman nor anybody else pretended to give any of the signals which were prescribed by a printed rule of the company for such a case, with which rule McBride was familiar, having had his attention called to it by it being shown to him and being posted up in the yard.   It was as follows:

"When any train is behind time or delayed at a station, or upon the road long enough to be in danger of being overtaken or met by another train, the conductor must have signals posted at proper distances (not less than 800 yards) in each direction to prevent possibility of a collision.   The proper signals to indicate danger are a red flag by day or red light by night, in connection with two torpedoes placed on the track, day or night, at least 800 yards (sixteen telegraph poles) distant in each direction of the road, and in such a position that the flag or light may be seen at least one mile before reaching the place of danger.

"At night or in foggy or stormy weather, or at places where signals can not be seen for at least one mile, the flagman will place two torpedoes upon the rail, three yards apart, at a distance of at least sixteen telegraph poles from the train, and place another torpedo upon the rail, after which he will return to the place where he fixed the first torpedoes and remain there until recalled by the whistle of his engine.   But if a passenger train is due he must remain until it arrives.   When the flagman returns to his train, he will remove from the track one of the torpedoes which he first put down, leaving two (eight telegraph poles apart) as a caution to any following train.   If for any cause, the forward brakeman can not go forward, as a flagman to protect the train, when that is necessary, the fireman must go forward and use the same precautions.   Both conductor and engineer are required to know that he has done so and that he is provided with proper signals."

It appears there was a semaphore at the crossing over which

McBride's train was lying, but that it was not the purpose or object of said semaphore to furnish signals to incoming trains upon said main track; that both McBride and Wishart, without attending to giving any of the signals required by said rules or even placing a red light upon the end of the caboose of their train which was so exposed, both lay down in said caboose to sleep, and about four o'clock and before daylight, an incoming freight express which had the right of way, came from the east or southeast, upon said main west track on which McBride's train was so standing, and those in charge of the running of the former, not seeing any signals, but seeing the semaphore, which showed a white light, and assuming that the track was clear, ran their train into the caboose wher McBride and Wishart were asleep, and the former received an injury of which in a few hours he died. Wishart was injured but survived, and was called as a witness by both parties. H testified when called by defendant, that when they stopped, as above stated, he proposed to go out and put up signals; but McBride told him the semaphore would take care of them, and to lie down and take a nap. The plaintiff introduced evidence tending to impeach his credibility, by showing contrary statements made soon after the event.

No negligence was predicated upon the circumstance that trains were standing on said main track ahead of McBride's and which compelled him to stop.

Mr. Cyrus D. Roys and Mr. Pliny B. Smith, for appellant.

Messrs. Clifford, Anthony & Paulsen, for appellee.

McAllister, J. If a person should take a blanket, and in the night time lie down upon a railroad track to sleep, knowing or having reason to know that trains would be likely to pass, and the servants of the railroad company, in ignorance of his presence there, should run a train over and kill him, no lawyer or jurist would consider that there was any liability on the part of the railroad company, in an action by his personal representatives in respect of such injury and death.

And why? Because he brought the disaster upon himself by his own negligence. It was a maxim of the Roman law that the harm which one's negligence brings upon himself, he is to be considered as not having received; so far as his relations to others are concerned the harm is uncaused. Wharton on Neg. § 130; C. & A. R. R. v. Becker, 76 Ill. 31.

Now, this case is nearly as plain a case of negligence on the part of the deceased, as that above supposed. He was the conductor of a freight train, with a caboose car on the end of it, and it was standing upon a main track, in the night time, where it was likely to remain for an indefinite period of time. The deceased knew that other trains from the eastward were due, or would be due, in a comparatively short time; that one particular train might come at any time; that when it did come it would be upon the same track on which his train was standing, and that his caboose car was directly exposed to invasion by the locomotive of such incoming train. There was a rule of the company directly applicable to the government of his course of action in such case, which, if it had been followed, would have insured not only his own safety but that of the property he had in charge, and other property of his employer. It is a reasonable rule, and one to which full and complete obedience was imperatively demanded under the then existing circumstances. It imposed specific duties upon him as conductor. He was familiar with that rule. His attention had been pointedly called to, and he had promised to obey it. That the rule might not be forgotten, it had been kept posted in the yard whence he took his trains. We must hold, from the evidence, that McBride was familiar with that rule. On the occasion in question, totally disregarding the duties imposed upon him by it, for his own and the safety of the property of his employer, and without any precautions on his part to warn off incoming trains, by signals, or to apprise them of the presence of his train in that place, he lies down to sleep in that caboose car, thus exposed, in the darkness of the night; and while thus asleep a train comes and the caboose is run into, destroyed, and he receives his death. It is nowhere pretended that any of the persons in

charge of the train which did the mischief were aware of the presence of McBride's train on the track on which they were going, because there was literally nothing to indicate such presence. It seems to us, in whatever light we view this case, that McBride's injury was the proximate result of his own negligence. To recover in this case two things must concur, viz.: negligence on the part of the defendant and no want of ordinary care on the part of the deceased. The evidence shows and we think without any conflict, that the deceased, manifestly, was not in the exercise of ordinary care to avoid being injured. The jeopardy to life, limb and property was great and imminent. It was just such a case as was in contemplation when the rule of the company, to which we have frequently adverted, was framed and adopted. The duty of placing the signals as therein required was imperative; and that there might be no failure, it was especially enjoined upon conductors and engineers to personally see to it that the specific things required were done. If that rule had been complied with, in this instance, the disaster would not have happened.

We feel constrained to hold that the verdict of the jury should have been set aside by the court below, for the reasons stated; and for denying defendant's motion to that effect, the judgment will be reversed and the cause remanded.

Judgment reversed.